

**NS**

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

MR. PERRY J. FERRARA, JR.  :  E.D OF PA.
:
**PLAINTIFF**  :  CV 07  2007 0 7 8 8
:
V.  :
MR. FREDERICK HARRAN,  :  (JURY TRIAL DEMANDED)
INDIVIDUALLY, AND IN HIS  :
OFFICIAL CAPACITY AS BENSALEM  :
TOWNSHIP DIRECTOR OF PUBLIC  :  **0 7  - 0 7 8 8**
SAFETY, AND  :
MR. WILLIAM MCCAULEY, IN HIS  :
OFFICIAL CAPACITY AS TOWNSHIP  :
ADMINISTRATOR, AND  :
MR. STEVEN MORAN,  :
INDIVIDUALLY AND IN HIS  :
OFFICIAL CAPACITY AS FMR.  :
DIRECTOR OF PUBLIC SAFETY, AND  :
JOSEPH DIGIRILAMO, IN HIS  :
OFFICIAL CAPACITY AS MAYOR OF  :
BENSALEM TOWNSHIP AND THE  :
COUNCIL OF BENSALEM TOWNSHIP  :
AND BENSALEM TOWNSHIP AND  :
BENSALEM TOWNSHIP POLICE  :
DEPARTMENT, ET AL,  :
:
**DEFENDANTS**  :
::




### CIVIL RIGHTS COMPLAINT

*Plaintiff, Mr. Perry Ferrara by and through his attorney, Brian K. Wiley, Esquire, hereby files*

*his civil action complaint for CIVIL RIGHTS VIOLATIONS, and retaliation, pursuant to 42*

*U.S.C. § 1983, §1985, §1981, and §1988; the Constitutions of the United States of America*

*and Article I of the Commonwealth of Pennsylvania; Title VII of the 1964 Civil Rights Act,*

*42 U.S.C. § 2000(e) et seq, as amended in the 1991 Civil Rights Act, and state law statutory*

*and common law claims including those arising under the Pennsylvania Whistleblower*

*Statute, 43 P.S. Section 1431 et seq., as follows:*

## PARTIES

1.      The Plaintiff herein is Mr. Perry Ferrara Jr. an adult citizen of the United States of America, and a resident of the Commonwealth of Pennsylvania, residing at 5724 Cricket Lane, Bensalem, Pa.

2.      The Defendant, herein is Mr. Steven Moran, at all times relevant hereto, employed sued in his individual, and in his official capacity as the Director of Public Safety for the Bensalem Township Police Department.

3.      The Defendant herein is Mr. Frederick Harran, at all times relevant hereto, employed sued in his individual, and in his official capacity as the former Deputy Director of Public Safety, Bensalem Township Police Department, and sued in his official capacity as the Director of Public Safety for Bensalem Township..

4.      The Defendant herein is Mr. William McCauley, sued in his official capacity as the Business Administrator for the defendant Bensalem Township Police Department.

5.      The defendant herein is Joseph DiGirolamo, sued in his official capacity as Mayor, of Bensalem Township.

6.      The defendant herein is the Bensalem Township Council, comprised of members Joseph Szafran, Joseph Pilieiri, Joseph DiEgidio, Edward Kisselback and Bryan Allen, a duly organized governmental body and or municipal entity of Bensalem Township.

7.      The defendant herein is the Bensalem Township Police Department, a duly organized law enforcement governmental agency within Bensalem Township.

8.      The defendant herein is Bensalem Township a duly organized municipality and governmental entity, located within the Commonwealth of Pennsylvania.

## JURISDICTION and VENUE

9.      The plaintiff incorporates herein the previous averments as if fully set forth

10.     Jurisdiction is invoked pursuant to 28 U.S.C. 1341. The Plaintiff's claims arise out of the laws and the Constitution of the United States of America; jurisdiction is founded in 28 U.S.C. 1331; The Court has jurisdiction of the within claim based upon federal question, pursuant to 28 U.S.C. § 1331.

11.     Venue may be laid pursuant to 28 U.S.C. § 1391e (3) within the Eastern District of Pennsylvania as the Plaintiffs reside within this Judicial District.

12.     All necessary and appropriate administrative prerequisites, if any, to the filing of this action have occurred.

13.     This Honorable Court has ancillary, pendent and supplemental jurisdiction over the Plaintiff's claims arising under the Pennsylvania Constitution, and the laws of the Commonwealth of Pennsylvania, pursuant to 28 U.S.C. § 1367.

## FACTUAL BACKGROUND

14.     The plaintiff incorporates herein the previous averments as if fully set forth.

15.     The Plaintiff, Mr. Perry J. Ferrara Jr. has been employed by the defendants as a Police Officer in Bensalem Township for over 17 years.

16.     Lieutenant Ferrara had an exemplary record of public service to the residents of Bensalem Township, the County of Bucks and the Commonwealth of Pennsylvania.

17.     Lieutenant Ferrara enjoyed regular promotions and commendations as he rose through the ranks of the defendants' police departments command structure.

18.     Prior to the events alleged herein, Lieutenant Ferrara earned the responsibilities and duties from the defendants to supervise and offer instructions on defendants' own police department's procedures and regulations to younger or less experienced township police officers..

19.     Prior to the events alleged herein, then, "Lieutenant" Ferrara incurred no previous disciplinary history, and instead enjoyed frequent commendations and promotions.

20.     Lieutenant Ferrara trained numerous law enforcement officers within the defendants' department on police procedures, including emergency and crisis response procedures.

21.     As part of the duties and responsibilities the plaintiff earned, the defendants appointed the plaintiff to the supervisory position of the "Patrol supervisor" for his assigned patrol shifts.

22.     The Patrol Supervisor also offers guidance, direction and instruction on the defendants' police vehicle pursuit practices and procedures.

23.     As part of the plaintiff's other responsibilities and duties, the defendants ordered and compelled the plaintiff to participate in several official investigations into several different allegations of serious police departmental misconduct and corruption by other officers within both the patrol and command staff.

24.     The Command Staff is the managerial hierarchy within the defendants' police department; the command staff consists of defendant Moran, defendant Harran, Defendant Mayor Di DiGirolamo, Lieutenant Kisselback, Lieutenant Campallone, and Captain Robinson.

25.     The plaintiff was ordered by defendants McCauley, Harran and Moran to investigate reports of complaints by Bensalem Township residents against other members of the command staff.

26.     Those allegations included complaints by Township residents that several members of the command staff, including but not limited to, defendants Harran and

Moran and Lieutenant Campallone were engaging in misconduct, conduct unbecoming a township police officer and violations of departmental procedures.

27.    At all times relevant hereto, defendants Harran and Moran and Lieutenant Campallone was a member of the same command staff which ultimately recommended and imposed the adverse employment actions against the plaintiff alleged herein.

28.    Lt. Campallone improperly, carelessly and negligently drove a township police vehicle through the wall of the United States Postal center in Bensalem Township.

29.    The plaintiff was the first officer to respond to the crash site, and observe Lt. Campallone's destruction of Bensalem Township police vehicle valued at approximately $28,000.00. Lt. Campalone failed to secure the vehicle or otherwise control, handle or operate the department's property as required by the defendants' policies regarding the use of police vehicles, yet was never formally disciplined by the defendants.

30.    These other subjects of investigations involved members of the same command staff which ultimately recommended and imposed the adverse employment actions against the plaintiff alleged herein.

31.    Lieutenant Kisselback, another member of the defendants' command staff who recommended and imposed the disciplines presently challenged, had himself breached department policies by procuring unauthorized assistance during the Sergeant's examination within the defendants' police department.

32.    During this sergeant's examination, the plaintiff was also a candidate, and competitor against Kisselback.

33.    At all times relevant hereto, the defendants' policies, practices and procedures required that any candidate for promotion to Sergeant complete the examination without *any* assistance from outside sources during the examination.

34.     After it was disclosed that Lieutenant Kisselback had contacted another Bensalem Township detective *during* the examination, Lieutenant Kisselback was given an ultimatum - withdraw his candidacy for sergeant, or be disciplined; Lieutenant Kisselback ultimately withdrew his application for promotion to sergeant.

35.     Lieutenant Kisselback  was also the first member of the command staff to retaliate against the plaintiff by voting for the unlawful suspension alleged herein.

36.     The plaintiff was also involved in, and participated in the investigations of a number of complaints made to the defendants by township residents that members of the command staff, harassed township residents, and their spouses, and otherwise were abusive and misused their governmental positions within the defendants' department.

37.     In 2003, Detective Gregory Young of the defendants' police department, was compelled to file administrative charges against the defendants for multiple violations of the defendants' anti-harassment and anti-retaliation policies, and for racial discrimination.

38.     Detective Young's charges included statements showing *direct* evidence of unlawful racial discrimination within the Defendants' Command Staff, including statements by then Captain Robinson.

39.     The defendants and its command staff repeatedly uttered the epithets *"nigger"* during Defendants' official department activities, and made similar discriminatory and unlawful statements regarding township employees, residents and taxpayers.

40.     Detective Young's internal departmental discrimination charges were initially filed within the command staff; defendant McCauley ordered the plaintiff to internally participate in the investigation of members of the command staff, including defendants Harran and Moran.

41.     The plaintiff participated in the investigation that ultimately reported that defendant Harran had violated the defendants' own anti-bias policies. The defendants' own internal investigation found that defendant Harran had conducted a biased and improper investigation regarding Detective Young's reports of discrimination within the Bensalem Township police Department.

42.     On or about June 26, 2003 defendant Harran ordered the plaintiff to participate in the Young investigation by giving an oral statement, that become an official part of the ongoing Young investigation.

43.     The following day, on or about June 27, 2003 the defendant Harran ordered the plaintiff to put his statement in writing, which the plaintiff did.

44.     Several days later, the defendant ordered the plaintiff to omit crucial material facts of his original truthful and complete statement, including that the defendants had been notified about Young's allegations of serious departmental misconduct.

45.     Defendant Harran ordered the plaintiff to sign an inaccurate statement; the plaintiff was ordered by defendant Harran to sign an altered and false statement plaintiff added that Harran's  ordered altered statement *"did not provide an accurate statement given to the Deputy Director"-* {Harran}.

46.     The plaintiff further placed the defendants on notice that they should refer to the plaintiff's unaltered and original statement.

47.     Additionally, shortly after testifying on behalf of  fellow  Police Officer Detective Gregory Young, and township employee Brandon Rhone, who are African American, during a Federal Court Title VII Race Discrimination trial, Officer Ferrara was unlawfully and retaliatory suspended, and then demoted.

48.     The retaliation and the disciplinary action immediately followed Mr. Ferrara's protected activities of participating in the internal investigations, and then

testifying truthfully during a deposition on or about March 21, 2005 during Bensalem Township police Detective Gregory Young's successful race discrimination federal court law suit.

49.     Notwithstanding the fact that defendant Harran was a target of the Young/ Rhone investigation defendant McCauley violated the defendants anti-harassment policy by ordering defendant Harran to "*investigate himself*"!.

50.     During the plaintiff's participation in the Young investigations, the township's insurance Carrier notified the defendants that there was exposure to liability for the township's unlawful and retaliatory customs, practices and procedures as carried out by defendants McCauley, Moran, Harran, and then Captain Robinson.

51.     In the defendants' insurance carrier's post-investigation notice to the township recommending settlement of the Young matter, municipal defendants Bensalem Township Council, Bensalem Township police department and Bensalem Township's were placed on notice that its' retaliatory policies, practices, customs and procedures was unlawful, and exposed the township, and its taxpayers to liability and concluded that "*the only time Moran and Harran open their mouth is to change feet!*".

52.     Despite the previous notice that its policies, customs, practices and procedures of creating pretextual, false and unlawful explanations for municipal defendants Bensalem Township Council, Bensalem Township police department and Bensalem Township, neither individual defendant McCauley, Moran or Harran or any of the governmental defendants took required and appropriate action.

53.     In lieu of taking appropriate action to prevent the deprivations of plaintiff's Constitutional and civil rights, instead the municipal defendants Bensalem Township Council, Bensalem Township police department and Bensalem Township continued to

recklessly and negligently retain, and employ defendants McCauley, Moran, Harran, and then Captain Robinson.

54.     The reasons given by the respondent for its retaliatory actions against plaintiff are not legitimate, and non-retaliatory, but instead are pretextual, and unprecedented within the defendants' own department and unlawful.

55.     The defendants were notified and warned by other members of the police department that the defendants' command staff were specifically targeting the plaintiff for retaliation and harassment because of the plaintiffs' roles in the aforesaid departmental investigations.

56.     Specifically, the plaintiffs' coworkers, and the Police Benevolent Association union and also Township residents complained to the defendants about the retaliation occurring against the plaintiff by defendants Harran, Moran, McCauley and DiGirolamo and by command staff members Kisselback and Campallone.

57.     As a result of the plaintiff's participation in the protected activities described herein, the defendants' unlawfully and retaliatorily demoted the plaintiff form Lieutenant to Sergeant; then demoted the plaintiff from Sergeant to patrolman and then suspended the plaintiff for two (2) weeks, and issued repeated baseless disciplinary charges against the plaintiff.

58.     None of the defendants took any steps to prevent these acts of retaliation or otherwise complied with the defendants' own anti-harassment and anti-retaliation procedures.

59.     But for defendant McCauley's recent criminal arrest for the criminal offenses of "Driving under the influence" and committing an illegal "hit and run" accident, the defendants would continue to recklessly and negligently employ defendant McCauley today.

60.    At all times relevant hereto, the Plaintiff was a public sector employee of the defendants herein.

61.    The Plaintiff is a citizen of the United States of America and a resident of the Commonwealth of Pennsylvania,

62.    The plaintiff is also a  public sector employee within the meaning, purview and protections of Article I of the Pennsylvania Constitution and under the First, Fourth, Fifth and Fourteenth Federal Amendments to the United States Constitution.

63.    At all times relevant times hereto, the Plaintiff was more than qualified and performed his duties and responsibilities as law enforcement officer, and employee of the Defendants in an outstanding and commendable manner.

64.    Defendants McCauley, Harran, and Moran in their individual capacities and defendant DiGirolamo in his official capacity, directly participated in the deprivations caused by the disciplinary actions against the plaintiff, and by setting in motion a series of disciplinary and adverse employment actions which the municipal defendants' ignored and which the defendants' anti-retaliation policy failed to prevent.

65.    The unlawful actions of individual defendants Harran, Moran and McCauley warned and or should have notified the municipal defendants that their unlawful suspensions and demotions inflicted constitutional injuries to the plaintiff.

66.    Thereafter, the Defendants unlawfully and retaliatorily suspended the Plaintiff on the pretextual grounds that his successful arrest of a fleeing felon (who ultimately plead guilty) violated township policies.

67.    Defendant Moran admitted to repeatedly retaliation against the plaintiff by filing numerous false disciplinary charges against the plaintiff during the aforementioned investigations.

68.     Thereafter, the plaintiff attempted to vindicate his federally protected rights in a Due Process Public Hearing.

69.     On or about January 9, 2007, the Defendants conducted a truncated and abbreviated predetermined public hearing in which neither Plaintiff nor his attorney was given the opportunity to cross-examine witnesses or otherwise represent or advocate for the Plaintiffs during the proceeding.

70.     The Plaintiff invoked his due process and contractual rights to not be terminated unlawfully, without cause or in a retaliatory manner

71.     The defendants refused the basic entitlements attendant to any adversarial hearing, including refusing to provide employee-witnesses;

threatening any Bensalem township officer that they would be disciplined if they testified for the plaintiff, or even appeared to offer support on behalf of the plaintiff;

disconnecting the microphones during the plaintiff's *public* hearing;

flatly refusing the plaintiff's requests to either offer witnesses or even permitting the plaintiff to testify and present his case pursuant to the Police Tenure Act; refusing to call as witnesses or even identify the members of the defendants command staff who ultimately were responsible for the adverse actions alleged herein..

72.     The truncated proceedings also made a mockery out of the plaintiff's rights to a Name Clearing hearing, and thereby denied the plaintiff of the benefit and enjoyment of the full panoply of federally secured Rights under the First, Fifth and Fourteenth Amendments and pursuant to Article I of the Pennsylvania Constitution.

73.     It is believed and therefore averred that similarly situated officers who did not engage in the protected activities alleged herein, would not have been unlawfully, excessively disciplined and/ or demoted for comparable actions.

74.     Similarly situated employees and police officers were never disciplined, suspended, and/ or demoted by the Defendants.

WHEREFORE, the plaintiff demands judgment in his favor.

### COUNT I – 42 U.S.C. § 1983 DEPRIVATIONS OF CIVIL RIGHTS

### FIRST AMENDMENT AGAINST ALL DEFENDANTS

#### *FIRST AMENDMENT RETALIATION*

75.     The Plaintiffs incorporate herein the averments contained in paragraphs 1 - 74 as if the same were set forth at length herein.

76.     At all times relevant hereto, the Plaintiff was a public sector employee of the defendants herein.

77.     The Plaintiff is a citizen of the United States of America and a resident of the Commonwealth of Pennsylvania,

78.     The plaintiff is also a  public sector employee within the meaning, purview and protections of Article I of the Pennsylvania Constitution and under the First, Fourth, Fifth and Fourteenth Federal Amendments to the United States Constitution.

79.     At all times relevant hereto, the defendants were governmental entities within the meaning and purview of 42 U.S.C. § 1983.

80.     At all times relevant hereto, the defendants Bensalem Township, The Bensalem Township Police Department, the Borough of Bensalem Township and the defendants sued in their official capacities had known or should have known that their policy, custom and practice of not enforcing its own anti-retaliation policy resulted in the damages and harm alleged by the plaintiff herein.

81.     Specifically, the plaintiff engaged in protected activities in both investigating and during his reporting of the allegations of defendants' misconduct alleged herein.

82.     Throughout the time period the plaintiff participated in the protected activities herein, the defendants engaged in their retaliatory disciplinary charges against the plaintiff.

83.     The defendants knew, or should have known, that it was clearly established that preventing governmental waste, fraud, and misuse of governmental resources, like those resources within the Bensalem Township Police Department, are matters of public concern within the meaning of the First Amendment to the Federal Constitution and Article One of the Commonwealth of Pennsylvania's Constitution.

84.     The plaintiff's protected conduct of participating in the investigations  to prevent waste, fraud and misuse of governmental funds like, attempting to prevent the destruction of township property due to a violation of defendants'' own procedures, or preventing racial discrimination within the public agency, substantially motivated the defendants herein to launch their series of adverse employment actions against the plaintiff which continue to this date.

85.     Those series of adverse employment actions include but are not limited to, defendants Moran and Harran retaliatorily and unlawfully lodging a string of false disciplinary charges against the plaintiff, that continue to this date.

86.     The series of unlawful and retaliatory adverse employment actions specifically include wrongfully demoting the plaintiff from his earned rank of Lieutenant to Sergeant.

Further demoting the plaintiff down to his present rank of patrol man;

Failing to discipline or otherwise prohibit or take steps to correct, known instances of cheating and forgery on the defendants' law enforcement examinations to supervisory positions, while punishing the plaintiff for less serious alleged infractions;

*But for* the plaintiff's participation and engagement in the protected activities involved in the investigations herein, the defendants would not have engaged in their continuing violations of the plaintiff's rights and privileges of employment under the First Amendment and the Pennsylvania Constitution and applicable federal and state laws.

87.     The plaintiff's participation in the protected activities like investigating matters of departmental mismanagement and abuse formed the basis for the series of disciplinary suspension, reprimands, demotions and denial of contractual benefits to which the defendants continue to unlawfully subject the plaintiff.

88.     In suspending the plaintiff, demoting and lodging false disciplinary charges as averred above, Defendants were motivated for the purpose of retaliating against Plaintiff for engaging in free expression and speech on matters of public concern, like the operation of township government and the behavior of township employees.

89.     By retaliating against the plaintiff as alleged herein, defendants caused Plaintiff to suffer a deprivation of his right to free speech guaranteed by the First and Fourteenth Amendments to the United States Constitution.

90.     The reasons given by the respondent for its retaliatory actions are pretextual, unprecedented and unlawful.

91.     The retaliation and the disciplinary action immediately followed Mr. Ferrara's protected activity of testifying truthfully during the internal affairs investigation and during Bensalem Township police Detective Gregory Young's successful race discrimination federal court law suit case (E.E.O.C Charge filed -2003).

92.     As a result of the actions taken by Defendants referred to above, Defendants has caused Plaintiff to suffer the loss of rank, privileges, salary and other fringe benefits.

WHEREFORE, Plaintiff demands compensatory and punitive damages in an amount to be determined; and award of attorneys' fees and costs as provided in 42 U.S.C. § 1988; and any other equitable remedy that the Court deems reasonable and just.

## COUNT II- DENIAL OF PROCEDURAL DUE PROCESS
### *LIBERTY INTEREST*

93.     The plaintiff incorporates herein the previous averments as if fully set forth.

94.     At all times relevant hereto, the Plaintiff was a public sector employee of the defendants herein.

95.     The Plaintiff is a citizen of the United States of America and a resident of the Commonwealth of Pennsylvania,

96.     The plaintiff is also a  public sector employee within the meaning, purview and protections of Article I of the Pennsylvania Constitution and under the First, Fourth, Fifth and Fourteenth Federal Amendments to the United States Constitution.

97.     At all times relevant hereto, the defendants were governmental entities within the meaning and purview of 42 U.S.C. § 1983.

98.     The defendants unlawfully deprived the plaintiff of his fourteenth amendment liberty interest in his reputation, good name, honor and integrity.

99.     The defendants unlawfully, falsely and retaliatorily voluntarily made statements, communications and representations to the public including to residents and neighbors in Bensalem Township and also to the plaintiffs' coworkers, subordinates, and supervisors.

100.     By falsely demoting, disciplining and suspending the plaintiff, the defendants have made stigmatizing communications, representations and statements to the plaintiff's department coworkers, subordinates and to his supervisors, family, friends and residents of Bensalem township.

101.     The defendants have deprived the plaintiff to constitutionally adequate procedural due process, including denying the plaintiff notice, an opportunity to meaningfully refute the charges that defendants falsely and unlawfully lodged against him.

## COUNT III – DEPRIVATION OF DUE PROCESS
### *PROPERTY INTEREST*

102.    The plaintiff incorporates herein the previous averments as if fully set forth.

103.    The terminated due process hearing denied the Plaintiff his job protection and contractual rights, specifically by denying them meaningful due process by way of denying Plaintiffs and their attorneys the opportunity to cross-examine witnesses or otherwise represent or advocate for the Plaintiffs during one truncated and abbreviated predetermined proceeding.

104.    During the period of time since Plaintiff was suspended and eventually threatened with termination by defendant Harran, Plaintiff has lost the opportunity to perform his job as a Lieutenant within defendants' police department. in accordance with his years of professional training and experience.

105.    By suspending and retaliating against the plaintiff, Defendants deprived Plaintiff of a civil right, the deprivation of which is a cognizable action under Section 1983, 42 U.S.C. § 1983.

106.    In their denial of the full panoply of due process and a meaningful public hearing, defendants have caused Plaintiff to suffer a deprivation of procedural due process rights afforded him by the Fourteenth Amendment of the United States Constitution, the deprivation of which is a cognizable action under Section 1983, 42 U.S.C. § 1983.

107.    As a result of the actions taken by Defendant referred to above, Defendant has caused Plaintiff to suffer the loss of rank, job record, salary and other fringe benefits.

108.    WHEREFORE, Plaintiff demands compensatory and punitive damages in an amount to be determined; and award of attorneys' fees and costs as provided in 42 U.S.C. § 1988; and any other equitable remedy that the Court deems reasonable and just.

## COUNT IV- DEPRIVATION OF SUBSTANTIVE DUE PROCESS

109.    The plaintiff incorporates herein the previous averments as if fully set forth.

110.    The suspension of Plaintiff and the decision contained in the defendants' due process hearing decision dated January 2007, denying the plaintiff the basic right in a public hearing, of calling witnesses, are arbitrary and capricious and therefore deprive Plaintiff his right to substantive due process rights afforded him by the Fourteenth Amendment of the United States Constitution, and by Article I of the Pennsylvania Constitution the deprivation of which rights is a cognizable action under Section 1983, 42 U.S.C. § 1983.

111.    As a result of the actions taken by Defendants referred to above, Defendants have caused Plaintiff to suffer the loss of rank, job record, his good name, salary and other fringe benefits.

WHEREFORE, Plaintiff demands compensatory and punitive damages in an amount to be determined; and award of attorneys' fees and costs as provided in 42 U.S.C. § 1988; and any other equitable remedy that the Court deems reasonable and just.

## COUNT V - CONSPIRACY CLAIM PURSUANT TO 42 U.S.C. § 1985
## PLAINTIFF V. ALL DEFENDANTS

112.    The Plaintiffs incorporate herein the averments contained in paragraphs 1 - 111 as if the same were set forth at length herein.

113.    At all times relevant, Defendants Moran, Harran, McCauley and DiGirolamo met, agreed and acted to deprive Plaintiff his rights guaranteed by the United States Constitution in violation of 42 U.S.C. § 1985 by wrongfully targeting him for disciplinary suspensions and thereby agree to drive him out of the department by denying him a full public hearing.

114.    The municipal defendants failed to act or otherwise respond to the concerted actions of defendants Harran, Moran and McCauley to lodge a series of adverse disciplinary actions against the plaintiff and thereby drive him from his employment,

despite receiving repeated warnings and complaints about harassment by the plaintiff's coworkers, superiors and township residents.

115.    As a result of the actions taken by Defendants referred to above, Defendants has caused Plaintiff to suffer the loss of rank, good name, job reputation and record, salary and other fringe benefits.

WHEREFORE, Plaintiff demands compensatory and punitive damages in an amount to be determined; and award of attorneys' fees and costs as provided in 42 U.S.C. § 1988; and any other equitable remedy that the Court deems reasonable and just.

### COUNT VI - EQUAL PROTECTION OF LAW
### PLAINTIFF VS. GOVERNMENTAL DEFENDANTS

116.    The Plaintiffs incorporate herein the averments contained in paragraphs 1 - 115 as if the same were set forth at length herein.

117.    Defendants have retaliated and discriminated against Plaintiff by treating him differently from other Bensalem Township employees in violation of the Fourteenth Amendment to the United States Constitution.

118.    The defendants neither had a rational basis for violating its own written policies of anti-harassment and anti-retaliation; given the repeated written and verbal notice of violations of the plaintiff's civil rights, the defendants actions fail to pass muster of strict scrutiny of the defendants'' treatment of the plaintiff's *participation* in the Young/ Rhone race (African—American) discrimination claims.

119.    As a result of the actions taken by Defendants referred to above, Defendants have caused Plaintiff to suffer the loss of salary and other fringe benefits.

WHEREFORE, Plaintiffs demand compensatory and punitive damages in an amount to be determined; and award of attorneys' fees and costs as provided in 42 U.S.C. § 1988; and any other equitable remedy that the Court deems reasonable and just.

## COUNT VII – 42 U.S.C. § 1981 - BREACH OF CONTRACT
## PLAINTIFF VS. ALL DEFENDANTS

120.    The Plaintiffs incorporate herein the averments contained in paragraphs 1 - 119 as if the same were set forth at length herein.

121.    As a public sector police officer employed by the defendants the plaintiff enjoyed contractual protections against retaliation in all of the terms and conditions of his employment.

122.    In retaliation for the plaintiff's participation during the aforesaid investigations, the defendants breached their contract with the plaintiff unlawfully and maliciously.

123.    As a result of his participation in the internal investigation during Detective Gregory Young's race discrimination complaint, defendants Harran, Moran , McCauley and the Bensalem municipal defendants lodged a series of false disciplinary charges against the plaintiff. The Plaintiff's demotion and suspension of employment under his contractual relationship with the defendants, constitutes a breach thereof in violation of Pennsylvania common law and 42 U.S.C. § 1981, entitling Plaintiffs to damages in the form of all bargained for payments.

WHEREFORE, Plaintiffs demand compensatory and punitive damages in an amount to be determined; and award of attorneys' fees and costs as provided in 42 U.S.C. § 1988; and any other equitable remedy that the Court deems reasonable and just.

## COUNT VIII - RETALIATORY POLICIES, PRACTICES AND PROCEDURES
## PLAINTIFF VS GOVERNMENTAL DEFENDANTS - BENSALEM TOWNSHIP,
## BENSLAEM TOWNSHIP COUNCIL AND BENSALEM TOWNSHIP POLICE
## DEPARTMENT

124.    The Plaintiffs incorporate herein the averments contained in paragraphs 1 - 123 as if the same were set forth at length herein.

125.    The Plaintiff protested the Defendants' racially discriminatory policies, practices and treatment, including the Defendants total failure to afford the Plaintiff meaningful due process prior to taking any disciplinary action, to no avail.

126.    The Defendant's unlawful customs, policies and practices including engaging in retaliation by its command staff; ordering sham investigations; depriving due process during said investigations; and failing to follow its own anti-harassment and anti-retaliation policies, of denying due process and of engaging in retaliation and disparate treatment on account of the plaintiffs' participation in federally protected activities like the Young investigation and then the Deposition,  included failing to correct its retaliatory disciplinary policies.

127.    The Defendants' disparate discipline and treatment of the Plaintiffs included, but was not limited to failing to either adopt or follow its own mandatory progressive disciplinary scheme and hearing procedure before suspending employees; and its practices and policies of reprimanding, suspending and constructively discharging the Plaintiff

128.    Similarly situated non-participant police officers were never disciplined, suspended, and/ or constructively discharged by the Defendants.

129.    The Defendants' explanation of the disparate discipline, training and treatment of the Plaintiff is pretextual in that the reason given was inconsistent and factually unsupportable, in that, the reasons provided were contrary to state and federal law, and were also in violation of its Defendants' own work rules and policies.

130.    The Defendants' practices, policies and procedures alleged herein constitute a pattern and practice of racial, national origin and ethnic discrimination, which are unlawful employment practices pursuant to the P.H.R.A and Title VII.

131.    As a result of the actions taken by Defendants referred to above, Defendants has caused Plaintiff to suffer the loss of salary and other fringe benefits.

WHEREFORE, Plaintiff demands compensatory and punitive damages in an amount to be determined and award of attorneys' fees and costs as provided in 42 U.S.C. § 1988; and any other equitable remedy that the Court deems reasonable and just.

### COUNT IX - TITLE VII RETALIATORY DEMOTION AND SUSPENSIONS
### PLAINTIFF VS. GOVERNMENTAL DEFENDANTS

132.    The Plaintiffs incorporate herein the averments contained in paragraphs 1 - 131 as if the same were set forth at length herein.

133.    The plaintiff is also a  public sector employee of the defendants within the meaning, purview and protections of Article I of the Pennsylvania Constitution and under the First, Fourth, Fifth and Fourteenth Federal Amendments to the United States Constitution.

134.    At all times relevant times hereto, the Plaintiff was more than qualified and performed his duties and responsibilities as law enforcement officer, and employee of the Defendants in an outstanding and commendable manner.

135.    At all times relevant, the Plaintiff participated in activities protected by Title VII of the 1964 Voting Civil Rights Act as amended 1991 Civil Rights Act

136.    In the written statements ordered by defendants McCauley Moran and Harran the plaintiff protested the Defendants' racially a discriminatory policies, practices and procedures of failing to follow and adhere to its own written anti-discrimination and anti-retaliation policies practices and procedures.

137.    As a result of Plaintiff's participation in protected activities and protests, Defendants engaged in a series of continuing violations of plaintiffs rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended in the 1991 Civil Rights Act. At all times relevant, Defendants committed *continuing violations* from 2003 to the present as described herein, and thereby deprived Plaintiff his right to procedural due

process, substantive due process, liberty, free speech, and equal protection of law in violation of Title VII.

138.    As a result of the actions taken by Defendants referred to above, Defendants has caused Plaintiff to suffer the loss of salary and other fringe benefits.

WHEREFORE, Plaintiff demands compensatory and punitive damages in an amount to be determined; and award of attorneys' fees and costs as provided in 42 U.S.C. § 1988; and any other equitable remedy that the Court deems reasonable and just.

## COUNT X - PENNSYLVANIA STATE LAW AND COMMON LAW CLAIMS
### PA. WHISTLEBLOWER COMPLAINT PURSUANT TO 43 PA.C.S. §1424(A)
### PLAINTIFF VS. ALL DEFENDANTS

139.    The plaintiff incorporates herein the previous averments as if fully set forth.

140.    At all times relevant hereto, the plaintiff was a public sector, civil service employee of the defendants.

141.    The defendants herein are "a public body" within the meaning and purposes of the Pennsylvania Whistleblower law, 43 Pa. C.S. 1421 et seq.

142.    Prior to being demoted, disciplined and suspended, the plaintiff had participated in good faith with the protected activities investigating waste, fraud and abuse e within the defendants' police department as alleged in the Factual Statement herein.

143.    Prior to the disciplinary actions alleged herein, the plaintiff participated in the investigation, prevention and reporting of waste, fraud and misuse of Bensalem financial resources within the Bensalem Township police department.

144.    The defendants cannot show that their disciplinary actions against the plaintiff are legitimate or non-pretextual in that the defendants' explanations continually evolved and the sanctions imposed violated the plaintiff's job protection rights as a civil service, public sector employee, and were unprecedented within the township's disciplinary history for police officers.

145.    After the plaintiff was requested by an appropriate authority to participate in the aforementioned several investigations, Defendants' present suspension, demotions

and disciplinary actions against the plaintiff, amount to discrimination prohibited by §
1423(b) of the Pennsylvania Whistleblower Act.

WHEREFORE, the plaintiff demands judgment in his favor.

## COUNT XI – VIOLATION OF THE PENNSYLVANIA CONSTITUTION
### PLAINTIFFS v. ALL DEFENDANTS

146.    The Plaintiffs incorporate herein the averments contained in paragraphs 1 -
145 as if the same were set forth at length herein.

147.    At all times relevant hereto, the Plaintiff was a public sector employee of the
defendants herein.

148.    The Plaintiff is a citizen of the United States of America and a resident of the
Commonwealth of Pennsylvania,

149.    The plaintiff is also a  public sector employee within the meaning, purview
and protections of Article I of the Pennsylvania Constitution.

150.    At all times relevant, Defendants actions as described herein deprived
Plaintiff his right to procedural due process, substantive due process, liberty, free speech,
and equal protection of law guaranteed by Article I of the Pennsylvania Constitution.

151.    As a result of the actions taken by Defendants referred to above, Defendants
have caused Plaintiff to suffer the loss of rank, salary and other fringe benefits.

WHEREFORE, Plaintiff demands compensatory and punitive damages in an
amount to be determined; and award of attorneys' fees and costs; and any other equitable
remedy that the Court deems reasonable and just.

## COUNT XII – PENNSYLVANIA HUMAN RELATIONS ACT CLAIMS
### PLAINTIFF VS. GOVERNMENTAL DEFENDANTS

152.    The Plaintiff incorporates herein the averments contained in paragraphs 1 -
151 as if the same were set forth at length herein.

153.    At all times relevant, Defendants committed *continuing violations* from 2003 to the present as described herein, and thereby deprived Plaintiff his right to procedural due process, substantive due process, liberty, free speech, and equal protection of law in violation of 43 P.S. §951, et. seq.

154.    As a result of the actions taken by Defendants referred to above, Defendants has caused Plaintiff to suffer the loss of rank, job title and good employment reputation, salary and other fringe benefits.

*WHEREFORE*, Plaintiff demands compensatory and punitive damages in an amount to be determined; and award of attorneys' fees and costs; and any other equitable remedy that the Court deems reasonable and just.

As a result of the actions taken by Defendants referred to above, Defendants has caused Plaintiffs to suffer the loss of salary and other fringe benefits.

As a result of Bensalem Township's illegal and retaliatory actions, Officer Ferrara has suffered damages and losses, including but not limited to, loss of pay and back benefits, loss of rank and privileges, attorney's fees, costs and expenses to date.

Officer Ferrara has also incurred medical and health care expense to treat the mental and emotional anguish, injuries and harm caused by the defendant's malicious, intentional and retaliatory actions upon the complainant, health insurance coverage and benefits to Mr. Ferrara and his dependents until he reaches 62;

Mr. Ferrara would be reimbursed six hundred dollars ($600.00) for the one day lost salary suspension during June 2006;

$16,000.00 in compensation for accrued, but unused sick and personal leave; Credit to Mr. Ferrara for sick time expended *since January 2006,* for stress related and sick leave from his January sick leave balance of 1, 070 hour to date, November 10, 2006;

Mr. Ferrara would be reimbursed for his Fraternal Order of Police Attorney's fees, costs and other related expenses in the amount of $ 6, 975.00;

Mr. Ferrara would be provided a letter of reference with mutually acceptable language;

The complete and verifiable expungement of any and all disciplinary actions in Mr. Ferrara's personnel file, pursuant to the Pennsylvania Personnel File Inspection Act Procedures Attorneys fees calculated to date,

*WHEREFORE,* Plaintiff demand compensatory and punitive damages in an amount to be determined; and award of attorneys' fees and costs; and any other equitable remedy that the Court deems reasonable and just.

BRIAN K. WILEY, Esq.
Val. Sig. Code
BKW5120

25

## **VERIFICATION**

I, _PIERINO J FERRARA JR_ verify that the statements made in the foregoing Petition are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Date: 2.13.2007

## CERTIFICATE OF SERVICE

I, BRIAN K. WILEY ESQUIRE, COUNSEL FOR THE PLAINTIFF IN THE
WITHIN MATTER, DO HEREBY CERTIFY THAT THE FOREGOING WAS
SERVED VIA REGULAR FIRST CLASS MAIL POSTAGE PAID, UPON THE
FOLLOWING, THIS _____22~ᴶ_____ DAY OF FEBRUARY, 2007 :

Bensalem Township
2400 Byberry Road
Bensalem, PA.
19020

BY:

**BRIAN K. WILEY, ESQ.**
**COUNSEL FOR THE PLAINTIFF**